## Keith v. Commonwealth.

(Decided May 2, 1922.)

### Appeal from Madison Circuit Court.

1. Indictment and Information—Confederating and Banding Together.—An indictment for confederating and banding together and going forth armed for the purpose of, and injuring another, may charge that part of a series of acts committed as a result of the confederation, took place in one county and part in another, if all said acts were continuing and constituted but one crime.

2. Indictment and Information—Confederating and Banding Together.—An indictment returned by the grand jury of Madison county charging three defendants with the crime of confederating and banding together to go forth for the purpose of intimidating,

alarming and injuring a named person, and with injuring him in both Madison and Fayette counties as a result of a series of acts, may be sustained by evidence showing that on the night in question the defendants went to the home of the witness, in Madison county, seized him, struck and injured him and put him into an automobile in Madison county and carried him that night into Fayette county, where they further abused and shot him, all said acts constituting but one crime.

3.   Criminal Law—Confederating—Res Gestae.—Defendant is not entitled to prove on the trial of an indictment accusing him of confederating, that he, after the commission of the crime, told certain witnesses about the crime and that he had not participated in it, for such statements would be hearsay as to the defendant, self-serving and not a part of the res gestae.

4.   Criminal Law—Keeping Jury Together in Felony Cases.—It is the duty of the trial court, after the submission of a felony case, to keep the jury together, but if the jury is allowed to separate in the presence of the defendant and his counsel, without objection, he thereby waives his right to have it kept together, and the question cannot be raised for the first time in motion and grounds for new trial.

5.   Criminal Law—New Trial—Newly Discovered Evidence.—A new trial will not be granted on the grounds of newly discovered evidence unless it be made to satisfactorily appear to the trial court that the alleged new evidence is of such potency and force as to be controlling upon another trial.

R. C. OLDHAM and GEORGE F. WYCOFF for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellant Keith, Lawrence Piercy and Monk Wilson were jointly indicted in the Madison circuit court, at its February term, 1922, for the crime of confederating and banding together to intimidate and injure P. W. Wells, and consummating the confederation by kidnapping, spiriting away and injuring the said Wells. Appellant Keith was put upon trial, found guilty and his punishment fixed at four years' confinement in the state penitentiary. He appeals.

The crime, which is thoroughly proven, is surrounded by deep mystery. The defendants all live in Lexington, and left there on the evening of December 2, 1921, traveling by automobile to Richmond and thence to the home of Walter Wells, where P. W. Wells was staying at the time. The Wells home was about fourteen miles from

Richmond. It appears from the evidence that neither appellant Keith nor his co-defendants, Piercy and Wilson, knew Wells, and Wells did not know either of the defendants. They had never corresponded, and so far as this record shows neither of them ever heard of the other. The defendants reached the Wells home shortly after dark and called "hello." Mr. Walter Wells responded, when one of the defendants asked for P. W. Wells. In response to this call P. W. Wells went out near the automobile and was told by defendant Piercy that they had been hired by a lady to bring her in a taxi from Lexington to see Wells but that they had met with a bad misfortune and the lady had been injured near Richmond and could not come further and had requested them to come and bring Wells to see her on a matter of business. Wells told them he could not go that night. They insisted, but he refused. Wilson at this time was examining the radiator of the car and Piercy was standing near the car talking to Wells. Wilson requested water for the radiator and Wells brought a pail containing water and this was poured by Wilson into the machine. They again asked Wells to go with them saying they would take him to the woman, and upon his refusal Piercy took hold of the arm of Wells, striking him over the head and face with a pistol, breaking his nose and otherwise injuring him, and he and Wilson picked up Wells and put him in the car, which was then ready to start, and they drove off in the direction of Richmond before Mr. Walter Wells, at whose house this occured, could answer the distress cry of P. W. Wells. According to the evidence of both P. W. Wells and appellant Keith, Wells was bleeding profusely as they drove along the highway, but notwithstanding this the defendants, Piercy and Wilson, frequently cursed and abused him calling him bad names and threatening to do him injury. After traveling some miles they commanded Wells to stand up and be searched; the search, according to Wells, was made by Keith and one other of the defendants. They took Wells' knife and asked him for his diamond, which he happened not to have with him. The car passed through Richmond, but Wells was directed not to make an outcry. He was carried into the edge of Fayette county, near the river bluff at a lonesome and dark place on the road toward Lexington, and was there directed to get out of the car and the defendants at the same time left the car, Keith going, as he says, back along the road towards

Richmond for the purpose of not seeing the other defendants kill Wells, while Wells says Keith was sent to keep a lookout. The other two defendants directed Wells to walk in front of them and to keep his face from them. While he was obeying this order Piercy and Wilson were close behind him and one or the other of them shot him in the back of the neck, which caused him to fall. Other shots were fired at him while he lay on the ground but did not take effect. The conversation which immediately took place between Piercy and Wilson, as related by Wells, indicates they thought they had killed Wells, and drove away in their car in the belief that he was dead. Soon after they left Wells managed to make his way to a small country store nearby, where he found assistance; later he was carried to a hospital, where he recovered. No motive whatever is shown by the evidence for the crime. It is proven, however, that during the journey the defendants, or at least one or more of them, asked Wells if he knew anything about one hundred cases of whiskey, to which he answered no, and at another time if he knew Mrs. McCreary, who lived at Lexington and when he had seen her, to which he responded he had been in Lexington on a recent date and had seen her. Neither Wells nor appellant Keith undertook to account for the unusual conduct of the defendants, except that appellant Keith says he was "fooling around on Broadway in Lexington" on the evening before the crime was committed when the car in which Wilson and Piercy were riding drove up and he was invited by one or both of them to take a ride. He said Piercy was driving the machine and that only Piercy and Wilson were in the car at that time. They did not tell him where they were going, but they only asked him to take a ride; that he had been drunk for several days and was then in a semi-drunken condition; that soon after he entered the car he found a supply of liquor from which he drank freely and soon fell asleep, later awakening to find himself near Richmond; that they had supper at a hotel in Richmond and then drove out a certain pike with which he was not acquainted, until they reached the Wells home; that he did not know where Wilson and Piercy were going nor what was their business; that he had not entered into any conspiracy or confederation with them and did not know the witness, P. W. Wells, but that when Wells was picked up and put in the car by the other defendants, he (Keith) undertook to befriend

Wells and to protect him from further harm, and that on one occasion the other two defendants cursed and abused Keith and called him a chicken-hearted son-of-a-bitch because he interceded for Wells; that he did not strike or injure Wells, nor offer to do so and did not put him in fear, or say or do anything calculated to intimidate or put him in fear; that when he reached Lexington after the commission of the crime he told the whole story to two different persons at different times that night, but owing to his drunken condition his story was rejected as a mere fabrication; later when arrested he gave this story in detail. With the record in this state, we are left to surmise the motive back of this terrible outrage.

Several alleged errors are relied on for a reversal of the judgment and are stated in brief of counsel for appellant as follows:

(1) Court erred in refusing to grant appellant a continuance;

(2) The demurrer should have been sustained to the indictment;

(3) Court erred in permitting the Commonwealth to introduce evidence as to what was said and done by defendants to Wells after they had carried him into Fayette county;

(4) A peremptory instruction should have been given for the defendant;

(5) The verdict is not supported by sufficient evidence;

(6) The verdict is contrary to law;

(7) Court erred in refusing testimony offered by the defendant;

(8) Court erroneously instructed the jury as to the law of the case;

(9) Court erroneously permitted the jury to separate after the case had been finally submitted to it;

(10) Error of the court in refusing to grant defendant a new trial on the grounds of newly discovered evidence.

We will consider these grounds in the order in which they are set forth above.

(1) So far as the record discloses no motion was made by appellant for a continuance of the case before the trial was commenced. The indictment was returned and the case set for trial at that term of the court. The defendant was before the court and pleaded not guilty.

He had counsel of his own selection. No affidavit was filed for continuance, and so far as the record discloses the trial court had no intimation that appellant Keith desired a continuance, if he did desire such.

(2, 3, 4, 5, 6) The demurrer to the indictment was properly overruled. It was based upon the theory that the indictment was deficient in that it charged the offense to have been committed both in Madison and Fayette counties. After accusing the three defendants of confederating and banding together in Madison county for the purpose of intimidating and injuring Wells, the indictment avers that the defendants did "wrongfully and feloniously confederate and band themselves together and with each other and go forth for the purpose of intimidating, alarming and disturbing the said P. W. Wells, and they did then and there, by arms and threats, call said P. W. Wells out of the house in said Madison county where he was staying, did order him to get into the automobile and go with them, and did then and there strike said P. W. Wells over the head with a revolver, breaking his nose and inflicting other serious wounds upon him; and did then and there forcibly put him into said automobile and transport him through the *county of Madison* into the *county of Fayette,* and did in the *county of Fayette* shoot Wells with a pistol, inflicting serious injury upon him, to his great distress, intimidation, alarm and injury."

The crime charged in the indictment consisted of several essential elements made up of different acts and words, the whole constituting but one complete offense— confederating and banding together for the purpose of and actually intimidating, alarming and injuring P. W. Wells—and although Keith was indicted and tried in the Madison circuit court evidence of what he and the other defendants did in Fayette county in pursuance of their common conspiracy to intimidate, alarm and injure Wells was competent evidence on the trial in Madison county because those acts were necessarily and properly a part of the single crime charged, consisting of an unbroken series of acts and materially, if not essentially, conducing to prove the confederation by showing the scope, extent, intent and purpose thereof. In order that the defendants might not be taken by surprise the Commonwealth properly charged in the indictment that part of the injury was inflicted in Madison county and part of

it in Fayette county. Certainly no advantage was taken of or wrong done appellant by the insertion of this information in the indictment, for the facts would have been competent as evidence even without the averment. Kentucky Statutes, section 1147; Criminal Code, sections 21 and 23.

(7) The trial court properly refused to allow appellant Keith to prove what he said to certain persons concerning the commission of the crime after he returned to Lexington on the night of the outrage. He called Brent Buckaninny and Sterling Johnson as witnesses and offered to prove by them that after he came back from Richmond, after the kidnapping and injury of Wells, he told them at different times and on separate occasions that night that a terrible crime had been committed by Piercy and Wilson on the Richmond pike over appellant's protest and against his will; that a man had been shot; that he (Keith) "begged them not to do it," and they told him he was a chicken-hearted son-of-a-bitch, and to go on up the road, but that he did not tell these witnesses to give this information to the police, nor did he do so. Just how long after the shooting of Wells it was that Keith told Buckaninny and Johnson about the trouble is not shown, but it it shown that he did not tell them immediately and that appellant Keith was very drunk at the time he made the statements. Of course, the first injury to Wells as the result of the conspiracy occurred several hours previous to that time, and appellant Keith during the interval had much time in which to think about the consequences of the act and to form, as best he could, an excuse for the deed. Such evidence, therefore, could not be received as a part of the *res gestae*. Moreover, it was mere hearsay and self-serving in its nature, three good reasons for the trial court's rejection of it.

(8) It is next objected that the instructions were erroneous. They began in the following way: "If the jury believe from the evidence beyond a reasonable doubt that in Madison and Fayette counties," and the naming of the two counties is one ground of complaint. This is but another way of assailing the sufficiency of the indictment which we have above considered. It was not error to so instruct the jury. Instructions must be based upon the pleadings and proof, and as the indictment properly contains the averment that the crime was committed in both Madison and Fayette counties, and

the proof directed to proving this averment, the court properly based the instruction thereon. Nor was it error to use the expression "by arms and threats" in the instruction for the evidence fairly bristles with statements concerning arms and threats.

It is contended by counsel for appellant that the instructions should have told the jury that if it found him guilty but had a doubt as to whether his crime was that charged in the indictment, or a lower offense, it was the duty of the jury to give him the benefit of the doubt and find him guilty of the lower offense; but we are unable to see by what course of reasoning either the jury or the court could have reached the conclusion that appellant Keith was guilty of any offense if not guilty of that charged in the indictment. We, therefore, think it was wholly unnecessary to instruct as suggested by appellant's counsel. It is also insisted that the court should have instructed the jury that the law presumes the defendant to be innocent until he is proven guilty beyond a reasonable doubt, and if upon the whole case the jury entertain a reasonable doubt as to any fact necessary to establish his guilt, then he is entitled to an acquittal and the jury should find him not guilty. This form of instruction on the presumption of innocence, has been more than once condemned by this court. The instruction upon the presumption of innocence should conform as nearly as may be to the Criminal Code provision on the subject, section 238, which reads: "If there be reasonable doubt of the defendant being proven to be guilty, he is entitled to an acquittal." Commonwealth v. Stites, 190 Ky. 402; Mickey v. Commonwealth, 9 Bush 593; Gatliff v. Commonwealth, 32 R. 1063; Minnaird v. Commonwealth, 158 Ky. 210; Breeden v. Commonwealth, 151 Ky. 217.

After the case had been submitted to the jury and the jury had deliberated upon it for some time, and the noon hour had arrived, the court admonished the jury in the usual way and allowed its members to disperse for dinner. After being out for about an hour, the court convened, the jury was called and the case again submitted to it and it returned to its room to consider of its verdict. Very soon thereafter the jury returned into court the verdict of which complaint is made. It is strenuously insisted by counsel for appellant that the separation of the jury after the submission of the case to it constitutes reversible error, and this is the most serious question

presented by this appeal. With reference to this admonition and separation of the jury, the record shows: "The jury herein met pursuant to the order for adjournment and after listening to the remainder of argument by counsel, this case was submitted. The jury not having reached a verdict at the noon hour, they were duly admonished by the court and allowed to separate until one o'clock. Court convened at one o'clock after adjournment for noon, and the jury was called and returned to the jury room for further consideration of this case, and made and returned the following verdict, to-wit: "We the jury, find the defendant, Thomas Keith, guilty and fix his punishment at four years' confinement in the penitentiary." Counsel for appellant say in brief that they do not remember whether appellant was present at the time of the noon adjournment when the jurors were allowed to disperse, but add appellant's presence was wholly immaterial because he could not waive his right to have the jury kept together as provided by section 244, Criminal Code, under the care of the sheriff after the case had been submitted to them for a verdict. Appellant files an affidavit in which he sets forth certain alleged newly discovered evidence upon which he relied for a new trial and now for a reversal, but he does not state that he and his counsel were not present in court at the time the jury was allowed to disperse. The trial was in progress. From what appears it must be presumed that both appellant and his counsel were then and there present in court when the judge admonished the jury not to talk about the case or to allow another to do so in their presence, and allowed the members to disperse for the noon hour. They were also present when the court convened at one o'clock. If it be admitted, as in effect it is, that appellant and his counsel were in court when the jury was allowed to disperse and no objection was made—none is shown—may he now take advantage of the error, if error it be, and have a reversal of the judgment? It is provided in section 244, Criminal Code, that in all cases which may be punished capitally the jurors, after they are accepted, shall not be permitted to separate but shall be kept together in charge of the proper officers. On the trial of other felonies, such as the one charged against Keith, the jurors, before the case is submitted to them, may be permitted to separate, in the discretion of the court, but after the case is submitted they shall be kept together in charge of an officer.

Appellant insists that as this section provides that the jury *shall be kept* together in charge of an officer, it is mandatory, and if the court permitted the separation of the jury, except in the manner provided in section 251 of the Criminal Code, the defendant has not been afforded that kind of trial contemplated by the 7th section of the Constitution, which declares that the ancient mode of trial by jury shall be held sacred and the rights thereof remain inviolate. So far as we are advised no criminal case involving the separation of the jury after the case had been submitted to it for a verdict has been considered by this court, but courts of other jurisdictions have passed upon the question. We have, however, in several cases decided that where a jury, before the case was submitted to it, was allowed to disperse without objection from the appellant, the prisoner by his silence waived his right to have the jury kept together in charge of the proper officer. Wilkerson v. Commonwealth, 88 Ky. 29; Vinegar v. Commonwealth, 104 Ky. 106; Bowman v. Commonwealth, 146 Ky. 486; Wade v. Commonwealth, 106 Ky. 321; Heck v. Commonwealth, 163 Ky. 518; French v. Commonwealth, 18 R. 574; Arnold v. Commonwealth, 194 Ky. 421.

The seventh section of the Constitution of this Commonwealth reads: "The ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate, subject to such modifications as may be authorized by this Constitution." We have held that this section of our fundamental law means a trial according to the course of the common law, and secures the right of trial by jury only in cases where a jury trial was customarily used at common law. Reiger v. Schulte, etc., 151 Ky. 129; King v. Commonwealth, 194 Ky. 144. At common law the jury in felony cases were kept together in charge of an officer and not permitted to separate from the time of their being impaneled and sworn until discharged, but this rule has been changed by statute in many of the states, including this Commonwealth. 16 Corpus Juris, 1075. We have established the rule that a defendant in a felony case may not waive any right guaranteed by the state or Federal Constitutions, but may waive any mere statutory right. In the Vinegar case, *supra*, the jury was separated into two groups of six each, one going with an officer to the hotel while the other went with another officer for a walk, and we held that as the appellant had not objected to this separation

of the jury and did not move for its discharge when the court again convened and ask a continuance of the case, he waived his right to rely upon the error. As the instant case was not a capital one, we are inclined to the opinion that the appellant Keith had the power and did in fact by his silence consent to the separation of the jury and by said acquiescense manifested by his failure to object or to move for a discharge of the jury when the court again convened, he waived his right under Criminal Code, section 244, which provides that the jury be kept together under the proper officers. If appellant had objected to the separation of the jury at the time the court allowed it, or if he had moved the court at any time before verdict for a discharge of the jury, it would have been reversible error to have overruled the objection and motion. Having failed to pursue this course he waived, as he had a right to do, the error. Arnold v. Commonwealth, *supra.*

(10) Lastly it is contended by appellant that a new trial should be granted because of newly discovered evidence, which he says would be of controlling influence upon another trial. The evidence upon which he relies is set forth in the affidavit filed with his motion and grounds for a new trial. From this affidavit it appears that some days before Wells was kidnapped the defendants, Piercy and Wilson, in an automobile, drove from Lexington through Richmond in the direction of where Wells resided, inquiring for his home, but so far as the affidavit shows did not go to that home on that occasion. It is urged by appellant that the conspiracy to injure Wells, if any, was formed on the occasion on which Piercy and Wilson drove through Madison county hunting for the home of Wells and not on the evening on which he was invited to take a ride with them; that these facts, if submitted to a jury, would tend to prove that the other two defendants were the only guilty parties, for they had entered into a conspiracy and confederation for the purpose of injuring Wells long before appellant was invited to ride with them. These facts appellant asserts were in the possession of the Commonwealth at the time and before the last trial but that its counsel withheld them from appellant. We do not think the facts set forth in the affidavit, if true, are of such importance as could have influenced the jury greatly or at all in appellant's favor. Granting that the other two defendants did make such a trip, it does not prove that

appellant Keith did not make the second trip with them and aid in the abduction and abuse of Wells on the occasion of the commission of the crime for which appellant and the other defendants were indicted. Having associated with Piercy and Wilson and being acquainted with their friends and associates appellant Keith was in better position to learn the facts concerning the first tour of Piercy and Wilson in search of Wells than most any other person could have been, and no doubt could have known of this first trip, if such was made, before the last trial had he exercised reasonable diligence.

The whole record considered, we are constrained to the view that appellant had a substantially fair and impartial trial and received a very slight penalty considering the enormity of the crime, at the commission of which he confesses he was present and in which the evidence tends to show and the jury believed he wilfully participated.

Judgment affirmed. Whole court sitting.