**Mark PADGETT, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2008–SC–000632–MR.

Supreme Court of Kentucky.

March 18, 2010.

Rehearing Denied June 17, 2010.

338

Emily Holt Rhorer, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Christian Kenneth Ray Miller, Assistant Attorney General, Office of Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

Appellant, Mark Padgett, was convicted in Campbell Circuit Court of criminal attempt to commit first-degree manslaughter, second-degree assault, and violation of an emergency protective order. On appeal, Appellant raises five issues: that he was compelled to incriminate himself, that the trial court failed to hold a proper hearing on his counsel's performance, that the trial court failed to inform him of his right to standby counsel, that the trial court denied him his right to a competency hearing, and that the prosecutor committed misconduct during her closing argument.

For the reasons set forth below, Appellant's convictions are affirmed.

## I. Background

On the evening of June 29, 2007, Appellant was looking for his two teenage sons in Ft. Thomas. He was unable to contact them by phone, so he drove around town in his truck, searching for them at the places they frequented. After a while, Appellant gave up his search and decided to return home. At this point, he noticed that a nearby church was hosting a festival, so he decided to park his truck and to go look for some friends.

While walking to the festival, Appellant heard his son P.J., a teenager, call for him. He testified that he then saw P.J. carelessly cross the street, in front of oncoming traffic. He testified that he yelled at P.J. to stop, as he watched a car pass in front of him. This deeply upset Appellant, who then asked P.J. whether his mother, Susan Padgett, was supervising him. P.J. warned Appellant that Susan was across the street, in a laundromat. This was a problem because, after their divorce, Susan had an emergency protective order against Appellant, requiring him to stay at least 500 feet away from her.

Appellant returned to his truck, intending to drive home, to avoid violating the protective order. He testified that he then saw P.J. cross the street once more, again in front of oncoming traffic. This made Appellant extremely upset. He testified that his eyes were blinking, he was having trouble breathing, and that he could not feel the ground beneath his feet. Apparently, Appellant then decided that he was going to show Susan that her failure to supervise P.J. was unacceptable. So, he pulled his truck into a parking spot near the laundromat, grabbed an SKS rifle from the back of his truck, and went inside to scare her. He testified that he left his truck running so that he could easily flee after he was done scaring Susan.

Inside the laundromat, a fight between Appellant and Susan ensued. Appellant testified that he kept his rifle to his side, but that Susan grabbed it, causing them to struggle for control over it. He insisted that he never intentionally hit Susan, but that she was hit as a result of their mutual struggle over the rifle.

Susan, however, testified that she felt an impelling force approach her, and by the time she turned around, she saw a rifle pointed at her head. Then, Appellant beat her several times with the butt of his rifle, as she attempted to flee and deflect his blows. Susan's testimony was corroborated by a witness inside the laundromat who testified that Appellant entered the laundromat, declared "it's show time," attempted to fire his rifle, and when that failed, began to beat Susan with it. Another witness, who was looking into the laundromat through a window from outside, also testified that Appellant beat Susan with his rifle.

Eventually, Susan escaped and made her way outside. She ran down the street, screaming for help. Apparently, while Appellant was inside the laundromat, fireworks in his truck, which he was keeping for Independence Day celebrations, mysteriously exploded, setting his truck on fire. This alerted police officers and some additional witnesses to the scene. Appellant testified that this turned the incident into his "worst nightmare" because he could not flee in his truck after scaring Susan, as he had planned.

Appellant left the laundromat. Witnesses, including a nearby police officer who came to the scene after the fireworks exploded, testified that Appellant then pointed his rifle at Susan as she ran down the street. One witness testified that Ap-

pellant pulled his rifle up in a "firing-type" pose; the officer testified that Appellant pulled his rifle up in a "ready-fire" pose. The officer also testified that he saw Appellant pull the trigger on his rifle, and when it did not fire, adjust its bolt action.

Appellant explained their testimony by positing that the strap on his rifle was bothersome, which caused him to move his rifle around as he ran. But he insisted that he never posed with his rifle, pointed it at Susan, or pulled its trigger.[1] Soon thereafter, Appellant dropped his rifle, ran, and was eventually arrested. Susan had found a hiding spot nearby, and was treated for injuries to her head and hand.

The jury convicted Appellant of criminal attempt to commit first-degree manslaughter, second-degree assault, and violation of an emergency protective order. He was sentenced to twenty years' imprisonment and appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

## II. Analysis

### A. Compelled Self-incrimination

■ Appellant argues that the trial court compelled him to incriminate himself by requiring him to testify to receive an instruction on extreme emotional disturbance. At trial, Appellant's theory was that he acted under extreme emotional disturbance, triggered by his seeing his son carelessly cross the street. To support his theory, Appellant planned to call an expert witness to testify. The trial court ruled that the expert's testimony would be inadmissible because his opinion was based on Appellant's out-of-court statements, including what Appellant saw his son do and how this made Appellant feel. After the trial court ruled that the

expert could not testify without some evidence beyond Appellant's out-of-court statements, Appellant took the stand to testify to the triggering event giving rise to his extreme emotional disturbance. The trial court then allowed the expert to testify.

■ An extreme emotional disturbance instruction must be supported by "some definite, non-speculative evidence." *Holland v. Commonwealth,* 114 S.W.3d 792, 807 (Ky.2003) (quoting *Hudson v. Commonwealth,* 979 S.W.2d 106, 109 (Ky. 1998)). Specifically, the evidence must show that some triggering event caused the defendant to suffer "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from [an] impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *Greene v. Commonwealth,* 197 S.W.3d 76, 81 (Ky.2006) (alteration in original, quoting *McClellan v. Commonwealth,* 715 S.W.2d 464, 468–69 (Ky.1986)); *see also* KRS 507.020(1)(a), 507.030(1)(b).

As in every other context, the evidence supporting extreme emotional disturbance must come from some admissible source. In *Talbott v. Commonwealth,* 968 S.W.2d 76 (Ky.1998), the defendant attempted to prove the presence of her extreme emotional disturbance with expert testimony based primarily on her out-of-court statements. In that case, the trial court refused to permit the expert testimony, and without any other evidence, refused to instruct the jury on extreme emotional disturbance. This Court affirmed, stating:

> Where the defendant does not testify and there is no other factual basis to

---

1. The rifle was loaded, but it did not fire. An expert testified that, due to the poor construction of the rifle, a cartridge could have been improperly seated such that a person could pull the trigger without causing it to fire.

support a defense of extreme emotional disturbance, that defense cannot be bootstrapped into the evidence by an expert opinion premised primarily on out-of-court information furnished by the defendant.... To permit this type of evidence would allow a defendant to testify by proxy without being subjected to the crucible of cross-examination. The objection to [the expert]'s testimony was properly sustained and Appellant's request for jury instructions on extreme emotional disturbance ... was properly denied.

*Id.* at 85.

In this case, the trial court's statements make clear that it was not requiring Appellant to testify, but was instead excluding inadmissible evidence, as in *Talbott.* The trial court said that it would not allow the expert to testify about the triggering event of Appellant's extreme emotional disturbance because that testimony would be supported only by Appellant's out-of-court statements to the expert. Indeed, the only evidence up to that point contradicted Appellant's out-of-court statements. Appellant's son P.J. testified that he looked both ways before crossing the street and that the only cars near him were stopped at red traffic lights. Susan also saw P.J. cross the street, but she testified that she could not see whether any traffic was approaching P.J. from her vantage point. Appellant was trying to introduce evidence of the triggering event, P.J. carelessly crossing the street in front of oncoming traffic, with his out-of-court statements, through the expert.

The trial court determined that Appellant would have to show the triggering event with some evidence other than testimony by proxy. Defense counsel argued that "circumstantial evidence" supported the expert's opinion in addition to Appellant's out-of-court statements. When the trial court disagreed, counsel asserted that "there's no evidence to the contrary." The trial court responded: "That's the point. There's no evidence."

In fact, there *was* evidence, but the evidence actually contradicted Appellant's out-of-court statements. Regardless, the record supports the trial court's conclusion that the expert opinion was based on Appellant's out-of-court statements, and not other evidence. Consequently, the court properly refused to let the extreme emotional disturbance issue be bootstrapped into the evidence, as in *Talbott.* KRE 104(a). To permit the expert's testimony would have been to improperly allow the defendant to testify by proxy. *Talbott,* 968 S.W.2d at 85.

▪ Moreover, Appellant's right against self-incrimination was not implicated by the trial court's ruling. The trial court did not require Appellant to testify; it simply required him to produce *some* admissible evidence to support the extreme emotional disturbance instruction. The fact that Appellant may have only been able to support this instruction by testifying does not implicate the Fifth Amendment. Just as this Court held in the context of the self-protection defense, the reasoning applies here:

> where circumstantial or indirect evidence fails to raise the issue of self-protection, the fact that a defendant must testify or forgo this defense does not implicate the Fifth Amendment. The defendant's "choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination."

*Hilbert v. Commonwealth,* 162 S.W.3d 921, 925 (Ky.2005) (quoting *United States v. Rylander,* 460 U.S. 752, 759, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983)). Accordingly, there was no error.

## B. Failure to Hold Hearing on Counsel's Performance

■ Appellant next argues that the trial court failed to hold a proper hearing on his counsel's inadequate performance. After the prosecutor had presented her case, but before Appellant had started to present his, Appellant declared that he was firing his attorneys. The trial court spoke to Appellant about his right to proceed pro se, the risks of proceeding pro se, and his complaints about his trial counsel. Appellant explained that his complaint was that his counsel was refusing to call certain witnesses on his behalf. The trial court explained that some of the testimony would be inadmissible; Appellant's counsel explained that he had tactical reasons for not calling others. The trial court ultimately gave Appellant some time to think about his decision to fire his attorneys and gave him the opportunity to make a phone call. When Appellant returned, he decided to keep his attorneys.

■ The trial court has an affirmative duty to inquire into the source and nature of a criminal defendant's expressed dissatisfaction with counsel. *Benitez v. United States,* 521 F.3d 625, 634 (6th Cir.2008). However, a searching inquiry is not required unless the defendant raises some "substantial basis for dissatisfaction." *Monroe v. United States,* 389 A.2d 811, 820 (D.C.App.1978). The nature and scope of the inquiry is not rigid. Instead, the necessary scope depends on the circumstances of each case. *Id.* at 821. Whatever the inquiry requires, though, it must be sufficient to elicit whether counsel has both the ability and the preparedness to effectively assist the defendant. *Id.*

Here, the trial judge sufficiently elicited that counsel had the ability to effectively assist Appellant. In their conversation, the trial judge told Appellant that one of the two of his attorneys had twenty-one years of experience, including in murder trials, and that he was representing Appellant to the best of his ability. The judge also questioned how Appellant could represent himself better than his attorneys, given their different levels of experience. The record of the above conversation shows that the trial judge was convinced that counsel had the ability to effectively assist Appellant, and nothing was revealed to the contrary.

Indeed, Appellant's complaint was not one of ability, but one of tactics. In particular, he complained that his counsel was refusing to call certain witnesses. Appellant said he wished to call the expert witness to testify as to his extreme emotional disturbance; the trial court explained, however, that it would not allow the expert to testify without evidence of the triggering event, based on its prior ruling. Appellant also read a list of witnesses he wished to subpoena. His counsel stated that he did not plan to call the people on Appellant's list, based on an investigator's interviews and contacts with them. Apparently, Appellant wanted some of the witnesses to testify to subjects that would open the door to evidence of his history of domestic violence against Susan, which had not yet been introduced. And some of the other witnesses would contradict Appellant's theory, or otherwise testify contrary to his expectations. Counsel was not unprepared, but was simply making reasonable tactical decisions with which Appellant disagreed.

Accordingly, the record shows that the trial court elicited that counsel was both able and prepared to effectively assist Appellant, despite Appellant's tactical disagreements with him. There was no error.

## C. Failure to Inform of Right to Hybrid Counsel

■ Appellant next argues that the trial court committed error by failing to in-

form him of his right to hybrid counsel under Section 11 of the Kentucky Constitution. *See Hill v. Commonwealth*, 125 S.W.3d 221, 228–29 (Ky.2004) (recognizing the right to hybrid counsel under Ky. Const. § 11). Appellant's claim is not that he was denied his right to hybrid counsel. Indeed, Appellant never requested hybrid counsel, and thus was not entitled to it. *Deno v. Commonwealth*, 177 S.W.3d 753, 757 (Ky.2005) ("[H]ybrid representation may only be granted to a defendant who makes a timely and unequivocal request for such representation." (citing *Moore v. Commonwealth*, 634 S.W.2d 426, 430 (Ky. 1982))). Rather, his argument is that, when the trial court asked him why he wanted to make a complete waiver of his right to counsel and proceed pro se, he was entitled to be informed that he could make a limited waiver and proceed with hybrid counsel instead.

To date, there is no case which requires a trial court to sua sponte inform a defendant of his right to hybrid counsel. If error, it is beyond a reasonable doubt that it did not affect the verdict in this case.

### D. Failure to Hold Competency Hearing

Appellant next argues that the trial court failed to hold a mandatory competency hearing. KRS 504.100(1) requires the court to order a competency examination upon "reasonable grounds to believe the defendant is incompetent to stand trial." And KRS 504.100(3) states that "[a]fter the filing of a report (or reports), the court *shall* hold a hearing to determine whether or not the defendant is competent." (Emphasis added.) Appellant claims his case must be reversed (or at least remanded for a retrospective hearing) because the court ordered a competency report under KRS 504.100(1) without holding the hearing required by KRS 504.100(3).

The relevant facts are undisputed. Prior to trial, defense counsel indicated that he would present evidence that Appellant suffered from a mental illness or from an extreme emotional disturbance. Based on this, the court sua sponte ordered a report from the Kentucky Correctional Psychiatric Center (KCPC) on Appellant's criminal responsibility and competency to stand trial. However, at this time, defense counsel indicated that competency was not an issue. Indeed, the report, which was later filed with the court, concluded that Appellant was competent. In addition, Appellant's private psychiatrist agreed that he was competent and testified as to this opinion (among others) at trial. The Appellant did not request a competency hearing, and no hearing was held. In fact, the record indicates that all concerned considered the Appellant to be competent to stand trial. Nonetheless, he now argues he was entitled to the competency hearing the judge was required to conduct.

However, absent constitutional considerations, such a hearing on the facts of this case could serve only to elevate form over substance. This Court has struggled with this scenario for some time now, and the current state of the law requires just that.

The discussion regarding a trial court's failure to hold a competency hearing began with *Mills v. Commonwealth*, 996 S.W.2d 473 (Ky., 1999). In *Mills*, there was no evidence before the trial court suggesting that the defendant was incompetent. However, the court ordered a competency report because defense counsel "filed notice of his intention to introduce evidence concerning mental illness, insanity, or mental defect." *Id.* at 485. After the filing of the report, which concluded the defendant was competent, "defense counsel stated that competency was not an issue and waived the hearing." *Id.* at 486. No hearing was held.

*Mills* began its analysis by describing the nature of competency hearings. First, it noted that they are rooted in due process under the Fourteenth Amendment. *Id.* (citing *Medina v. California,* 505 U.S. 437, 439, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992)). Second, it noted that they are constitutionally mandatory if the trial court knows facts that place the defendant's competency in doubt, *id.* (citing *Drope v. Missouri,* 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 385–86, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)), as well as "clearly mandatory" under the Kentucky statute once a court-ordered competency report is filed, *id.* (citing KRS 504.100(3)). *Mills* further opined that the hearing cannot be waived. *Id.* (citing KRS 504.100(3); *Medina,* 505 U.S. at 449–50, 112 S.Ct. 2572; *Pate,* 383 U.S. at 384, 86 S.Ct. 836). Despite this, *Mills* then held that not holding the hearing was harmless error because the defendant had "failed to establish any factual basis which should have caused the trial court to experience reasonable doubt as to ... competence to stand trial." *Id.*

This logic was later followed in *Turner v. Commonwealth,* 153 S.W.3d 823 (Ky. 2005), and *Bray v. Commonwealth,* 177 S.W.3d 741 (Ky.2005). In *Turner,* where there was no factual basis to doubt the defendant's competency, this Court held that failure to hold a hearing after a report was filed did not rise to palpable error.[2] 153 S.W.3d at 831–32. That same year, in *Bray,* this Court held that the court's refusal to hold a hearing was harmless, where the appellant requested a hearing despite the fact that "two psychological opinions [which] were virtually identical" had found him competent. 177 S.W.3d at

751. These cases indicated that without some evidence of incompetence after the defendant is examined, the failure to hold a hearing could not be prejudicial error. These cases, like *Mills,* appear to say that a hearing is necessary under constitutional principles, but what they actually do is find a way to preserve the conviction through harmless or palpable error analysis.

However, as *Thompson v. Commonwealth,* 56 S.W.3d 406 (Ky.2001) makes clear, there may be prejudicial error on constitutional grounds if sufficient, specific facts suggest that the defendant could be incompetent. In *Thompson* the court ordered a competency report, but the defense "conceded" the issue of competency and no hearing was held. On appeal, this Court noted that it is a violation of Due Process if an incompetent defendant stands trial or enters a plea. Unlike the cases discussed above, when the court ordered the competency report, there were serious concerns about the defendant's competency, which were noted in the judge's order, including "possible serious and chronic mental illnesses, neurological problems which may be organic in nature, and the presence of a mental condition which may affect defendant's ability to perceive and interpret information provided to him by counsel." *Id.* at 407–08. And even though the report ordered by the court found the defendant competent, this Court found that failure to hold the hearing was clearly prejudicial, given these concerns.

In so doing, this Court established a standard of review as to whether failure to conduct the competency hearing violated Due Process: "Whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary

---

2. Interestingly, in both *Mills* and *Turner,* defense counsel did not object to the lack of a hearing. Yet, *Mills* used harmless error review, rather than palpable error review as it should have, like *Turner.*

hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Id.* at 408 (quoting *Mills,* 996 S.W.2d at 486). This is the appropriate standard when reviewing the constitutional dimensions of the failure to conduct a competency hearing. Thus, if there are sufficient, specific facts pointing toward incompetence, a hearing is absolutely mandatory, whether it is held at trial or retrospectively, *see id.* at 407–08; however, without such specific facts, the failure to hold a hearing could not be prejudicial error, *see Bray,* 177 S.W.3d at 751; *Turner,* 153 S.W.3d at 832; *Mills,* 996 S.W.2d at 486. This is how things stood, until *Gibbs v. Commonwealth,* 208 S.W.3d 848 (Ky.2006).

The facts in *Gibbs* are virtually identical to those in *Mills:* the court ordered a competency report, this report concluded that the defendant was competent, defense counsel indicated no hearing was needed based on the report, and the trial continued without a hearing. *Id.* at 852. Unlike *Thompson,* there were no specific facts indicating incompetence. Despite the holding in *Thompson,* this Court reversed, noting that "it is difficult to ignore what appears to be a mandatory hearing requirement in KRS 504.100(3)." *Id.* at 853. That statute states that "[a]fter the filing of a report (or reports), the court *shall* hold a hearing" to determine competency. (Emphasis added.) In concluding that "the trial court erred by not conducting a competency hearing following a court ordered competency evaluation," this Court remanded with orders to conduct a retrospective competency hearing. *Gibbs,* 208 S.W.3d at 853.

*Gibbs* made a clear departure from the previous rule. It held that failure to hold a hearing after the filing of a court-ordered report is automatically reversible, without regard to whether there is substantial evidence in the record supporting incompetency, waiver, or error review, or even whether a retrospective hearing is feasible considering the current state of the evidence. Because the statute states that a hearing "shall" be held, *Gibbs* gives every case constitutional magnitude based solely on the language of the statute rather than by actually conducting constitutional analysis. It is our most recent case on failure to hold the statutorily required hearing, and is thus where the law currently stands.

However, *Gibbs* is an aberration, given our previous cases. The analysis in *Gibbs* is based almost exclusively on *Mills,* it has nearly identical facts to that case, and yet it adopts the opposite holding without explanation. Also, its remedy departs from that of *Thompson,* again without explanation. In *Thompson,* this Court clearly indicated that not every case could be in the posture to conduct a viable *retrospective* competency hearing that would satisfy due process because of a possible lack of or deterioration of evidence. *Thompson,* 56 S.W.3d at 409. In *Gibbs,* however, this Court simply declared that it was "unaware of any reason that a proper hearing could not be held," and, substituting its judgment for that of the trial court as to the current state of the evidence of competency, remanded for a retrospective competency hearing regardless of the state of the evidence. This was a mistake in analysis.

The effect of *Gibbs* is to create a bright-line rule that the mandatory language in our statute requires reversal for a retrospective hearing in any case where the court orders a competency report. However, in doing so, *Gibbs* makes no constitutional analysis and ignores our long-standing rule that defendants may generally waive mere statutory rights if there are no constitutional implications. *Keith v. Com-*

monwealth, 195 Ky. 635, 243 S.W. 293, 297 (1922). It also ignores our rule that if errors are statutory only, they must be reviewed for either harmless or palpable error, see RCr 9.24, 10.26, depending on whether or not they were preserved.

The confusion this Court had in *Gibbs* is understandable. If, as *Mills* noted, competency hearings are rooted in due process, mandatory under U.S. Supreme Court precedent, and cannot be waived, see *Mills*, 996 S.W.2d at 486, then our typical rules about statutory waiver and statutory error would be inadequate to vindicate the constitutional right which may be at stake. Indeed, it is contradictory to say in one breath that the right to a hearing is constitutionally based and cannot be waived, and in the next breath to say that reversal is not required because failure to hold the hearing is harmless under our statute. Yet, this is exactly what our previous cases did. The holding in *Gibbs* no doubt came, in part, to rectify this.

However, as the dissent to *Gibbs* correctly points out, the prior cases (and *Gibbs* itself) went astray because "they failed to recognize that *two separate interests—a statutory right and a constitutional right*—are at stake in analyzing whether a defendant is competent, and, more importantly, that different standards govern those interests." *Id.* at 859 (Roach, J., dissenting). Our prior cases, especially *Gibbs*, conflated these two separate rights.

■ The first important difference between the constitutional and statutory rights is "the evidentiary threshold at which each right attaches." *Id.* at 860. "The [Fourteenth Amendment] due-process right to a fair trial is violated by a

court's failure to hold a proper competency hearing where there is *substantial evidence* that a defendant is incompetent." *Filiaggi v. Bagley,* 445 F.3d 851, 858 (6th Cir.2006) (emphasis added, citing *Pate v. Robinson,* 383 U.S. 375, 385–86, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)). Relevant evidence includes "a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence." *Drope v. Missouri,* 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). This last factor makes clear that the relevant inquiry is whether there was substantial evidence when it was time to hold the hearing, which occurs after evaluative opinions on competence are filed with the court.

In contrast, the statutory right to a hearing requires only that, once an exam and report have been ordered based on reasonable grounds and the report has been filed with the court, the court *shall* conduct a competency hearing. KRS 504.100(3). The obvious inference is that, lacking substantial evidence of incompetency, constitutional grounds are not implicated, though statutory grounds may be. Because "[t]he Fourteenth Amendment right requires a significantly higher evidentiary burden than the statutory right ... it is possible that the evidentiary threshold for the statutory right could be met without that evidence rising to the level sufficient to invoke the Fourteenth Amendment right." *Gibbs,* 208 S.W.3d at 860 (Roach, J., dissenting). Our prior cases have not recognized this distinction, instead analyzing the two rights as one combined right.[3]

■ The second difference is whether the rights can be waived. *Mills* correctly noted that U.S. Supreme Court cases "indicate strongly that a defendant cannot

---

3. Typically, this was done by citing the standard for the constitutional right, followed by analyzing whether or not the error was harm-

ful or palpable under our statute. *E.g., Mills,* 996 S.W.2d at 486; *Bray,* 177 S.W.3d at 749–51.

waive a competency hearing." *Mills,* 996 S.W.2d at 486. What *Mills* and our other cases were not careful to point out, however, was that these U.S. Supreme Court cases deal with the federal, *constitutional* right to a hearing which is invoked when there is substantial evidence in the record of incompetency. In contrast, our statutory right to a hearing is not constitutional, and can be waived when there is not substantial evidence of incompetency in the record, because our long-standing rule is that defendants may generally waive statutory rights. *Keith,* 195 Ky. 635, 243 S.W. at 297. Our prior cases have not recognized this either.[4]

■ If there is substantial evidence that a defendant is incompetent, and thus the constitutional right to a hearing attaches, the trial court must conduct a competency hearing (at trial or retrospectively) even if both counsel and the defendant expressly waive it. Waiver alone cannot satisfy due process. But, if there are not substantial grounds to believe the defendant is incompetent, only the statutory right has attached. And because any statutory right can be waived, there would be no error if the trial court declined to hold a hearing upon a valid waiver, despite the mandatory language in the statute. Certainly, if only the statutory right is at issue, the best practice would be for the judge to establish on the record whether the hearing has been waived, after the filing of the report.

To illustrate, a record where there is no history of prior mental problems, the defendant comports himself well in court, and the report indicates he is competent, would not give rise to a due process hearing requirement, as there is not substantial evidence to support a finding of incompe-

tency. On this record, a defendant could waive his competency hearing, and the trial court would be justified in not holding one. To illustrate further, if there is no evidence of incompetence but the trial court orders an evaluation anyway, the court's order and an evaluation indicating he is competent, standing alone, would not be substantial evidence triggering the constitutional right to a hearing. This is no more than applying the standard of review set forth in *Thompson,* and is consistent with federal law, *see Filiaggi,* 445 F.3d at 858; *Williams v. Bordenkircher,* 696 F.2d 464, 467 (6th Cir.1983).

If only the statutory hearing is at issue, and the constitutional considerations are not applicable, our general rules with respect to waiver, palpable error, or harmless error if the lack of a hearing is preserved, apply just as they do for any other non-constitutional errors. RCr 9.24, 10.26. It is difficult to imagine a case in which the statutory error would be prejudicial as long as the constitutional right to a hearing was not implicated.

■ In light of the above distinctions, the purpose of the retrospective competency hearing becomes clear. It is only in the limited situation of a violation of the constitutional right to a hearing (when there is substantial evidence of incompetency in the record) where it is necessary to remand for a retrospective hearing. Even then, on remand, the trial court must determine if a retrospective hearing is feasible, considering the state of the evidence, and conduct such a hearing if it is. *Thompson,* 56 S.W.3d at 409. A retrospective hearing, if appropriate, can satisfy due process. If the evidence does not allow for an adequate retrospective hear-

---

4. For example, the appellant in *Mills* waived the hearing, and only the statutory right could have been implicated. Yet, *Mills* resolves the issue by saying the failure to hold a hearing was harmless, rather than saying no error occurred at all due to the waiver.

ing, then the defendant is entitled to a new trial.

■ However, if only the statutory right to a hearing is at issue (when there is not substantial evidence of incompetency in the record), a retrospective hearing is not absolutely mandatory, *contra Gibbs*, 208 S.W.3d at 853, because it can be waived, *Keith*, 195 Ky. 635, 243 S.W. at 297, and would rarely be prejudicial error by itself in any event, RCr 9.24, 10.26. What this means to the trial court, being subject to the statutory mandate, is that the hearing can be waived, or simply not done (in the court's discretion), when there is no constitutional requirement for a hearing (when there is not substantial evidence of incompetency in the record).

Our prior cases did not properly analyze the two distinct rights at stake. *Gibbs*, 208 S.W.3d at 859 (Roach, J., dissenting). Henceforth, the approach outlined above is the one to be followed. To the extent that our prior cases are inconsistent with this approach, they are overruled.

■ Turning to this case, there is no constitutional error because there was not substantial evidence that should have given the trial court doubt with respect to competency. True, some initial doubts were raised when defense counsel indicated that he might present evidence of a mental illness or extreme emotional disturbance. But defense counsel's statements alone could not have been *substantial* evidence. The fact is that Appellant's competency was no longer in doubt after the KCPC report specifically concluded that

he understood courtroom proceedings and that he was competent. Appellant's own private psychiatrist agreed, and no contrary evidence was produced. In short, the evidence was entirely one-sided, and it pointed to Appellant's competence. This certainly does not rise to the level of substantial evidence of incompetence, meaning that no hearing was required by due process.

Although there was no hearing held pursuant to the statute, none is required in this case. Before the examination was ordered, counsel told the court competency was not an issue. Arguably, any hearing was waived at this point, and failing to hold one was not error. After the filing of the report, the issue of a hearing was never raised. All of the evidence at that time suggested that Appellant was competent. No evidence at that time, or later during the trial, suggested anything else. Certainly, even if there was no waiver, failing to hold a hearing does not rise to the level of palpable error, there being no manifest injustice. Consequently, there is no need for a retrospective competency hearing in this case.

### E. Misconduct during Closing Arguments[5]

Last, Appellant assigns as error seven different misstatements from the prosecutor during closing argument. The first four of these are characterized as misstatements of fact, one as a misstatement of law, one as an improper accusation that Appellant was lying, and the last as improper expression of opinion.

---

5. The Commonwealth asserts that this section of Appellant's brief should be stricken. The Commonwealth's assertion seems to be that Appellant's brief cited both the record and the law, but failed to actually make an argument, thus contravening CR 76.12(4)(c)(v), our rule requiring the "contents" of briefs to include "[a]n 'ARGUMENT.'" In his reply brief, Ap-
pellant notes that the Commonwealth made a typographical error, misciting the relevant provision as CR 76.12(4)(*b*)(v), which, as Appellant points out, does not exist. This Court finds such quibbling to be an unfortunate distraction. And in any event, Appellant's brief contains a sufficient argument to be duly considered.

### 1. Four Misstatements of Fact

Counsel has wide latitude during closing arguments. *Brewer v. Commonwealth*, 206 S.W.3d 343, 350 (Ky.2006). The longstanding rule is that counsel may comment on the evidence and make all legitimate inferences that can be reasonably drawn therefrom. *East v. Commonwealth*, 249 Ky. 46, 52, 60 S.W.2d 137, 139 (1933). This Court recently explained the appropriate standard of review for prosecutorial misconduct during closing arguments, stating that reversal is required "only if the misconduct is 'flagrant' or if each of the following are satisfied: (1) proof of defendant's guilt is not overwhelming; (2) defense counsel objected; and (3) the trial court failed to cure the error with sufficient admonishment." *Miller v. Commonwealth*, 283 S.W.3d 690, 704 (Ky.2009) (emphasis removed, quoting *Barnes v. Commonwealth*, 91 S.W.3d 564, 568 (Ky.2002)). Additionally, this Court "must always consider these closing arguments 'as a whole.'" *Id.* (quoting *Young v. Commonwealth*, 25 S.W.3d 66, 74–75 (Ky.2000)).

First, Appellant assigns as error the prosecutor beginning her closing argument by holding up Appellant's rifle to her shoulder in a firing position while declaring "it's show time." The prosecutor continued by telling the jury that this is what Appellant had said as he entered the laundromat. At trial, Appellant objected to her holding the gun up to her shoulder while saying "it's show time" because no evidence supported the inference that these two actions occurred *simultaneously*. Instead, the most the testimony showed was that Appellant walked into the laundromat, declared "it's show time," and that some time while in the laundromat he pointed his rifle at Susan.

Appellant is correct that the evidence did not affirmatively show that these events happened simultaneously. However, given the ambiguity in the testimony, the prosecutor's implication that these acts occurred simultaneously (or close to simultaneously) is reasonable. The witness inside the laundromat testified that Appellant said "it's show time," aimed his rifle at Susan, and that everything happened very quickly. Susan testified that she felt an impelling force enter the laundromat and that by the time she could turn around Appellant was already aiming his rifle at her. Although the precise timing of events is ambiguous, the evidence shows that Appellant held his rifle in a firing position and said "it's show time" in very short order. Accordingly, linking the two events temporally, as the prosecutor did, is not misconduct. Thus, there was no error.

Second, Appellant assigns as error the prosecutor indicating that Susan injured her hand while fighting with Appellant. At trial, Appellant objected to this statement, stating that Susan injured her hand later while she was hiding from Appellant, not while she was fighting with him. The evidence, however, was unclear on this point. Susan appeared to first notice how profusely she was bleeding while she was hiding, but it is not clear when she first sustained the injury to her hand.

Yet, enough evidence was introduced to make the prosecutor's inference reasonable. Appellant testified that, while struggling with Susan over his rifle, he cut his own hand on his rifle's bayonet. It is reasonable to believe Susan also suffered injuries to her hand in that struggle. Additionally, Susan testified that, when Appellant was beating her with the butt of his rifle, she attempted to deflect his blows with her hands. This is certainly enough to reasonably infer that she injured her hand during this fight, and not later when she was hiding. There was no error.

■ Third, Appellant assigns as error the prosecutor preparing a diagram for the jury of the area surrounding the laundromat. Appellant objected at trial that one of the witnesses was not in the position shown on the diagram. While using the diagram, the prosecutor conceded to the jury that the diagram was not to scale, was not completely accurate, and was being used to show, in general, where witnesses were standing. Apparently, the prosecutor used the diagram to show that the witnesses' testimony was consistent from their respective vantage points, to refute Appellant's argument to the contrary. Insofar as the diagram was not completely accurate, this misconduct was not "flagrant," given the prosecutor's admission to the jury that the diagram was not completely accurate and was only being used to show generalities. This is not error.

Last, Appellant assigns as error the prosecutor's misstatement as to where a witness said Appellant was standing when he aimed his rifle outside the laundromat. Specifically, Appellant objected at trial when the prosecutor said the witness testified that Appellant was standing "at the corner," pointing on her diagram to a corner between two buildings. Appellant asserted this was a misstatement because the witness actually said he was standing "at the *street* corner." As the Commonwealth correctly points out in its brief, however, the witness testified that he saw Appellant "pose up on the corner in a firing-type pose." The witness did not describe Appellant's location as the *street* corner. It thus appears that Appellant's trial counsel made an erroneous objection at trial, and his appellate counsel simply repeated it to this Court. Accordingly, there was no error.

## 2. Misstatement of Law

■ Counsel may, during closing arguments, discuss the law applicable to the case as instructed by the court. Counsel may not, however, misstate the law or make comments on the law inconsistent with the court's instructions. *East,* 249 Ky. at 52–53, 60 S.W.2d at 140 ("Neither has such counsel the right to intentionally and knowingly misapply the instructions given by the court to the facts in the case so as to mislead the jury and cause its members to depart from the instructions and return a verdict not authorized thereby."). The standard for whether or not prosecutorial misconduct is reversible error in this context is the same as in the context of misstating the facts, as described above, and is generally satisfied if the misconduct is flagrant·or prejudicial to the defendant. *Miller,* 283 S.W.3d at 704.

■ Appellant argues that the prosecutor misled the jury by misstating the standard for extreme emotional disturbance. In particular, he objected at trial that the prosecutor characterized the standard as whether Appellant's actions were reasonable, as opposed to whether his reaction to the triggering event giving rise to his extreme emotional disturbance was reasonable. Appellant points out that the jury asked the court a question about extreme emotional disturbance during its deliberations, and he suggests that this indicates the jury remained confused by the prosecutor's misstatements.

The potentially misleading effect of the prosecutor's misstatements, however, was not prejudicial. After Appellant first objected to the prosecutor's misstatement, the trial court allowed the prosecutor to correct her error. The prosecutor then described the appropriate standard. Later, in response to another objection, the trial court re-read the relevant portion of the instructions to the jury, indicating that the court's instructions, and not anything the parties said, were the law the jury

must apply. The prosecutor then continued her closing argument, referencing the appropriate standard.

Contrary to Appellant's argument, the jury's question to the court did not indicate it was confused by the prosecution's misstatements. During deliberations, the jury gave a note to the trial court reading only "Extreme Emotional Disturbance." The trial court then called the jury to receive a specific question. The subsequent discussion was not recorded, but the court and parties summarized it once the recording had resumed. Apparently, the jury was confused in thinking that anyone who tried to kill another person must be, in some sense, extremely emotionally disturbed. They thus, it appears, thought that any attempted killing would be an attempted first-degree manslaughter rather than an attempted murder. Ultimately, the trial court told the jury to re-read the instructions and told them they could ask further questions if they continued to be confused. The jury later found Appellant guilty of attempted first-degree manslaughter.

Here, the jury's confusion was contrary to the standard as initially misstated by the prosecutor. The prosecutor misstated that the standard was whether the accused acted reasonably. But the jury did not think that every person who attempted to commit murder acted reasonably; they thought that every person who attempted to commit murder must be extremely emotionally disturbed. The prosecutor made no misstatements about this.

Regardless, after the jury expressed its confusion, the court told them to re-read the instructions defining extreme emotional disturbance, and then to resume deliberation. This removed any remaining doubt that the jury acted on the prosecution's misstatement of the law, rather than the court's instructions. Accordingly, the prosecution's misstatements were not prejudicial, and thus they do not constitute reversible error.

### 3. Accusing Appellant of Lying

 The prosecutor's assertion that Appellant was lying is a more serious matter, but is likewise not reversible error. Consistent with the general rule that in closing arguments counsel may make reasonable inferences based on the evidence, the Commonwealth may suggest that a defendant was lying if this is a reasonable inference. *United States v. Francis*, 170 F.3d 546, 551–52 (6th Cir.1999); *see also People v. Wilson*, 36 Cal.4th 309, 30 Cal. Rptr.3d 513, 114 P.3d 758, 779 (2005). To make this a reasonable inference, the defendant must take the stand and there must be discrepancies between the evidence and the defendant's testimony.

In this case, it was reasonable to infer that Appellant was lying. In fact, Appellant's testimony directly contradicted the testimony of several other witnesses. Consequently, either Appellant was lying or several other witnesses were. For example, Appellant testified that Susan was injured while she struggled with him over the rifle but that he never intentionally hit her with it. Testimony from Susan, which was consistent with her injuries and the testimony of two other witnesses, indicated that he rather aggressively beat her over the head with the butt of the rifle as she attempted to run away and deflect his blows. Additionally, Appellant denied trying to shoot his rifle; other witnesses testified that he aimed the gun and pulled the trigger. And Appellant's own son testified that he crossed the street in front of two cars stopped at red traffic lights, contrary to Appellant's testimony that the traffic was oncoming. The above contradictions support the inference the prosecutor made that Appellant's story "just doesn't make

sense, and it doesn't make sense because he's lying." There was no error.

### 4. Expression of Opinion

 Last, Appellant makes the claim that the prosecutor improperly vouched for the evidence and improperly expressed her opinion. In particular, at trial he objected to the prosecutor making comments prefaced with phrases such as "I think" and "I find." The trial court then told the prosecutor to preface her comments with phases such as "we think," which she then did. Appellant contended, however, that statements such as "we think" would also be impermissible, as they turn a statement into an opinion.

 It is improper for counsel to express personal opinions as to a person's guilt or innocence, or to make any inferences unwarranted by the evidence. *See generally United States v. Young*, 470 U.S. 1, 9–11, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). However, counsel may make any arguments reasonably supported by the evidence. *Id.; East*, 60 S.W.2d at 139. Indeed, the key is whether the statement is reasonably supported by the evidence, as this is what distinguishes normal, proper argument from something improper, such as suggesting that evidence outside of the record supports a particular conclusion.

In this case, the prosecutor did nothing improper. Her statements prefaced by phrases such as "I think" or "we think" were not misconduct. Prefatory phrases such as "I think" are often used unintentionally, as a matter of habit, to make the claims that follow seem less bold. Such phrases hedge one's argument, making it seem less authoritative, and their use is a habit that is often difficult to change. Importantly, nothing suggests these phrases were used to attempt to inflame the jury, bolster the credibility of witnesses by per-

sonally vouching for them, or to make the jury consider anything other than the evidence presented a trial. To the contrary, this is a natural way of speaking when presenting an argument. Accordingly, there was no error.

### III. Conclusion

For the foregoing reasons, the judgment of the Campbell Circuit Court is affirmed.

All sitting. All concur.