RENDERED:  JUNE 13, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0836-MR

COMMONWEALTH OF KENTUCKY                                     APPELLANT

v.      APPEAL FROM FAYETTE CIRCUIT COURT
        HONORABLE JULIE M. GOODMAN, JUDGE
        ACTION NO. 18-CR-01084

JAMES HARVEY HENDRON, JR.                                      APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  A. JONES, L. JONES, AND KAREM, JUDGES.

KAREM, JUDGE:  After a jury found James Harvey Hendron, Jr. ("Hendron")

guilty of murder, the Fayette Circuit Court granted him a new trial.  The

Commonwealth of Kentucky (the "Commonwealth") appeals from the Fayette

Circuit Court's order granting Hendron's motion for a new trial and has requested

this Court to reinstate the jury's verdict.

    We disagree with the circuit court's finding of prosecutorial

misconduct that reached the level of palpable error.  We further believe that the

circuit court abused its discretion in ordering a new trial. Therefore, we reverse its order, granting a new trial and remand with instructions to reinstate the jury's verdict.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 17, 2018, Hendron shot and killed his 23-year-old son, Austin Hendron ("Austin"). Hendron admitted to committing the offense but contended at trial that he killed Austin in self-defense.

The jury convicted Hendron of murder and recommended a sentence of life imprisonment. Hendron subsequently filed a motion for a new trial based on allegations of prosecutorial misconduct, most of which Hendron's defense counsel failed to object to at trial. The circuit court granted Hendron's motion, set aside the verdict, and ordered a new trial. This appeal followed.

We will discuss further facts as they become relevant.

## ANALYSIS

### 1. Standard of Review

As discussed, Hendron failed to preserve almost all the issues he raised in his motion for a new trial. Thus, he is requesting palpable error review. In *Commonwealth v. Jones*, the Kentucky Supreme Court discussed the palpable error rule of Kentucky Rule of Criminal Procedure ("RCr") 10.26, stating:

> An unpreserved error that is both palpable and prejudicial still does not justify relief unless the reviewing court

further determines that it has resulted in a manifest injustice, unless, in other words, the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be "shocking or jurisprudentially intolerable."

283 S.W.3d 665, 668 (Ky. 2009) (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006)). "A finding of palpable error must involve prejudice more egregious than that occurring in reversible error, . . . and the error must have resulted in manifest injustice." *Webb v. Commonwealth*, 387 S.W.3d 319, 329 (Ky. 2012) (internal quotation marks and citation omitted).

This Court reviews the circuit court's grant of a new trial for an abuse of discretion. *Rowe v. Commonwealth*, 355 S.W.3d 480, 485 (Ky. App. 2011). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

### 2. **Discussion**

The circuit court granted Hendron's motion for a new trial based on his claim that prosecutorial misconduct occurred during the Commonwealth's closing argument and in its examination of certain witnesses. We will examine each of these allegations in turn.

### a.  **Alleged Misconduct in the Commonwealth's Closing Argument**

### 1.  **Burden-Shifting**

In this case, the circuit court determined that the prosecutor misstated the law concerning self-defense during closing arguments and inappropriately shifted the burden of proof to Hendron.  "Prosecutorial misconduct is '[a] prosecutor's improper or illegal act involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment.'" *Commonwealth v. McGorman*, 489 S.W.3d 731, 741-42 (Ky. 2016) (quoting *Noakes v. Commonwealth*, 354 S.W.3d 116, 121 (Ky. 2011)).  Moreover, "[a]ny allegation of misconduct must be viewed in the context of the overall fairness of the trial."  *Barrett v. Commonwealth*, 677 S.W.3d 326, 332 (Ky. 2023) (citation omitted).  Indeed, "[t]o justify reversal, the Commonwealth's misconduct must be so serious as to render the entire trial fundamentally unfair."  *Id.* (internal quotation marks and citation omitted).

"If the misconduct is objected to, we will reverse on that ground if proof of the defendant's guilt was not such as to render the misconduct harmless, and if the trial court failed to cure the misconduct with a sufficient admonition to the jury."  *Duncan v. Commonwealth*, 322 S.W.3d 81, 87 (Ky. 2010).  Otherwise, if the defense fails to object, "we will reverse only where the misconduct was

flagrant and was such as to render the trial fundamentally unfair." *Id*. (citations omitted).

In the case *sub judice*, defense counsel did not object at trial to any of the statements Hendron alleges constituted unauthorized burden-shifting. Therefore, we must determine whether the Commonwealth's alleged misconduct was "flagrant" to warrant reversal.

> We utilize four factors to determine whether misconduct is flagrant:
>
> (1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused.

*Bowling v. Commonwealth*, 553 S.W.3d 231, 242-43 (Ky. 2018) (citation omitted).

And again, even if Hendron shows flagrant misconduct, because defense counsel failed to object at trial, we would also have to find that he suffered "manifest injustice" before granting any relief. *See Matheney v. Commonwealth*, 191 S.W.3d 599, 606-07 n.4 (Ky. 2006).

In this case, the circuit court found that the prosecutor erred by stating:

> But it's very important to point out that if you convict him under Manslaughter Second or Reckless, you must believe ***beyond a reasonable doubt*** that when he committed the offense, he truly believed, in his heart of hearts, ***that this amount of force was necessary in order to protect himself*** from death or serious physical injury.

You all have to believe that he believed that, at that time.
Alright. Didn't occur to him that he could just lock the
door, didn't occur to him that he could just stay in the
house, didn't occur to him he could just call the police,
he didn't think of any of those things. ***That's what you
have to believe***. ***Beyond a reasonable doubt***.

Additionally, the circuit court pointed to a PowerPoint presentation

shown to the jury by the Commonwealth stating the following:

To get there . . .

You have to believe **BEYOND A REASONABLE
DOUBT** that Defendant believed he had to use deadly
force to protect himself from his son . . . .

Finally, toward the end of the closing, the Commonwealth also made

the following statement:

So I'm asking you all to find the Defendant guilty of
murder. Not the lesser. Not the self-defense. ***You can't
believe beyond a reasonable doubt that this Defendant
thought that was appropriate to use on his child***.

We review these statements under the four "flagrancy" factors from

*Bowling*. As to the first factor, we acknowledge that these statements were

inaccurate recitations of the law that served to prejudice Hendron. *See Barrett*, 677

S.W.3d at 334. Once the defense has raised the issue of self-defense, the burden is

on the Commonwealth to prove beyond a reasonable doubt that the defendant was

not privileged to act in self-defense. *Estep v. Commonwealth*, 64 S.W.3d 805, 811

(Ky. 2002).

-6-

Regarding the second factor, we must also consider that these comments were relatively isolated.  The Commonwealth showed the PowerPoint slide cited by the circuit court for only a few seconds as it moved to other slides.  And the Commonwealth's statements amounted to "a few sentences that were spoken in the middle of the Commonwealth's . . . closing argument." *Barrett*, 677 S.W.3d at 334 (holding that an isolated misstatement of law concerning the presumption of innocence did not require a new trial under the palpable error standard).  The Kentucky Supreme Court has held that a few sentences spoken in the middle of the Commonwealth's 55-minute-long closing argument were isolated because the comments were not repeated or emphasized.  *Hall v. Commonwealth*, 645 S.W.3d 383, 399 (Ky. 2022).  Because the Commonwealth only made one comment with the words "I believe" during the approximately 60-minute-long closing argument, such comment was isolated, which weighs in favor of the Commonwealth.

Next, we turn to whether the prosecutor's comments were deliberately or accidentally placed before the jury.  Although we are unable to conclude that the Commonwealth deliberately misled the jury by misstating the law, there is also nothing to suggest that the Commonwealth was not acting deliberately when the prosecutor made the comments in front of the jury.  As such, this factor weighs in neither Hendron's nor the Commonwealth's favor.

Finally, the circuit court was required to "evaluate the strength of the evidence against" Hendron when measuring the impact of the foregoing statements. *Barrett*, 677 S.W.3d at 335. In this case, Hendron's statements to police after the shooting provided ample evidence of his criminal intent. Hendron made statements to the police indicating that self-defense was not the real reason he killed his son; instead, he had "had a few beers and . . . was kinda fed up with" Austin's behavior. Moreover, when a detective asked Hendron after the shooting whether he saw a gun on Austin when he was inside the house, Hendron responded, "No, to be honest, no." Considering the evidence against Hendron, this factor weighs in the Commonwealth's favor.

Having found one of the four factors weighs in Herndon's favor and two in the Commonwealth's favor, the Kentucky Supreme Court has opined that if there is a state of "relative equipoise," we conduct "an examination of the trial as a whole" to ascertain whether the comments undermined its "essential fairness[.]" *Mayo v. Commonwealth*, 322 S.W.3d 41, 57 (Ky. 2010) (citation omitted).

Given the evidence of Hendron's guilt, the circuit court erred in determining the Commonwealth's comment in the closing argument was "so egregious that it undermined the essential fairness of [Hendron's] trial." *Barrett*, 677 S.W.3d at 335. Moreover, numerous correct statements on the applicable burden of proof remedied the Commonwealth's misstatements in this case. In its

opening statement, the Commonwealth stated, "[w]e the Commonwealth hold the burden of proof." Additionally, Hendron's defense counsel correctly discussed the burden of proof in the closing argument, stating, "[t]he Commonwealth has to prove to you beyond a reasonable doubt not just that [the defendant] shot and killed his son, Austin. They also have to prove to you beyond a reasonable doubt that he did not do so in protection of himself."

Moreover, it is important to note that the jury instructions contained a proper recitation of the relevant law concerning self-defense:

> You shall find the Defendant, James Harvey Hendron, Jr. not guilty unless you are satisfied from the evidence alone and beyond a reasonable doubt that he is guilty. If upon the whole case you have a reasonable doubt that he is guilty, you shall find him not guilty.
>
> You will find the Defendant, James Harvey Hendron, Jr., guilty of Murder under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt . . . [t]hat he was not privileged to act in protection of self or protection of another.

The circuit court allowed the jurors to take copies of the jury instructions – which accurately stated the burden of proof – with them as they deliberated. Under Kentucky law, "[i]t is presumed that the jury will follow the instructions issued to it by the trial court." *Morgan v. Scott*, 291 S.W.3d 622, 643 (Ky. 2009) (footnote citations omitted). Indeed, when analyzing an analogous situation, the Kentucky Supreme Court held that a misstatement of law in the Commonwealth's closing

-9-

argument was "mitigated by the fact that the trial court's jury instructions correctly reflected the law[.]" *Matheney*, 191 S.W.3d at 606.

Thus, we have determined that the Commonwealth's burden-shifting comments did not amount to flagrant prosecutorial misconduct, as they were not egregious enough to undermine the essential fairness of Hendron's trial.

### 2. **Personal Opinion**

The circuit court next found that the Commonwealth inappropriately interjected the prosecutor's personal opinion into the closing argument. While "[i]t is improper for counsel to express personal opinions as to a person's guilt or innocence, or to make any inferences unwarranted by the evidence . . . counsel may make any arguments reasonably supported by the evidence." *Padgett v. Commonwealth*, 312 S.W.3d 336, 353 (Ky. 2010) (citations omitted). "[T]he key is whether the statement is reasonably supported by the evidence, as this is what distinguishes normal, proper argument from something improper, such as suggesting that evidence outside of the record supports a particular conclusion." *Id*.

Specifically, the circuit court included the following as examples of the Commonwealth's alleged improper use of personal opinion in the closing arguments:

> -"[The jury instruction for Murder] doesn't say you can find the defendant not guilty if Austin had the bag

[containing a handgun] in his hand.  Which ***I dispute their assertion of that.  I don't believe that he did***."

-And then Mike [Williams], ***who we actually hadn't heard from him in five years***, uh, and showed up on Monday.  ***And I kind of suspected, I don't think this guy's gonna remember what happened, and as a matter of fact he did not remember what happened***.

-***Nobody in this case actually saw Austin with a gun***. Nobody saw it.  The whole week, and nobody says it.

-***And I want to point out also that Defendant is not a feeble old man***.  He was 45 years old at the time this happened.  He worked in a warehouse, he had a job, he could drive.  ***He could have pushed Austin back, he could have shoved him, he could have done any number of things***.  ***What you're not allowed to do is shoot somebody when they shove you***, that's not a thing that we're allowed to do.

-***If you believe that he had the right to shoot his own child as he was fleeing, after he was pushed, that's a not guilty.  I don't know how you could believe that***.

-***If you believe that he failed to perceive the risk that his conduct would result in Austin's death, that's a reckless homicide.  I don't think anybody could say that you failed to perceive the risk that you, would shoot somebody and they would die***.

-The judge mentioned before that you should have every piece of the puzzle to make this decision, which ***I respectfully disagree with because I have tried a whole lot of cases, and I've never had one where I've been able to give you every single piece of the puzzle***.

-I know the defendant gave a lot of statements, and ***I think we should question the credibility of someone who***

-11-

*has given four different stories which get more hopeful for him every time that he makes one*.

Additionally, the following exchange occurred among the Commonwealth, defense counsel, and the circuit court:

> *Commonwealth*: "***Oh, and before I move on, Austin was followed out of the house and shot three times in the back***, and what's interesting about that …"
>
> *Defense*: "Objection, your honor."
>
> *Court*: "You may approach."
>
> *Commonwealth*: "***I'll correct. Once in the back, once in the chest, once under here (pointing to her leg), OK?*** What's interesting about that is that he's lying on his back when the paramedics arrive. He wasn't rolled over, alright? I believe that he was shot …"

Going through each of the circuit court's points to which the defense objected, the court disagreed with the Commonwealth using the phrase "I believe" during the closing argument. However, the Kentucky Supreme Court has held that a prosecutor's "statements prefaced by phrases such as 'I think' or 'we think' [are] not misconduct." *Padgett*, 312 S.W.3d at 353. Indeed, "[p]refatory statements such as 'I think' are often used unintentionally, as a matter of habit, to make the claims that follow seem less bold." *Id*. The Kentucky Supreme Court went on to state that "[s]uch phrases hedge one's argument, making it seem *less authoritative*, and their use is a habit that is often difficult to change." *Id*. (emphasis added). We

-12-

see no impropriety in the Commonwealth's use of the term "I believe" in the closing argument.

Moreover, defense counsel objected to the Commonwealth's statement that Austin was shot three times in the back, while the evidence indicated that Austin was shot twice in the back of his body and once in his chest. However, after the defense's objection, the Commonwealth agreed during a bench conference to correct this statement and did so once the closing argument recommenced. As previously discussed, because the Commonwealth cured this statement, the misconduct must be flagrant to require a new trial. *Dickerson v. Commonwealth*, 485 S.W.3d 310, 329 (Ky. 2016). And again, because the statement was isolated and the Commonwealth promptly corrected it after defense counsel's objection, it was not flagrant and did not affect the fundamental fairness of the trial. *See Barrett*, 677 S.W.3d at 334.

Defense counsel failed to object to the other allegedly improper examples mentioned by the circuit court in its order. Again, the standard is whether the statements constituted flagrant misconduct that undermined the trial's overall fairness. *Dickerson*, 485 S.W.3d at 329. First, the circuit court took issue with the prosecutor's statement that she did not believe that Austin had his backpack in his hands when Hendron shot him. This statement was not flagrant

-13-

prosecutorial misconduct, as the parties provided differing evidence at trial concerning this issue.

For instance, defense counsel asked Hendron's roommate, Michael Williams, about his statement to police on the day of the shooting that he had seen Austin with his backpack before Hendron shot him. However, the Commonwealth provided evidence that at the grand jury proceedings, Williams had testified under oath that he had not seen Austin with the backpack prior to the events leading to Austin's death. Moreover, Kristen Gordon, Hendron's neighbor, also did not testify at trial that she saw Austin with his backpack when he was shot. Thus, the Commonwealth could reasonably infer from the evidence that Austin did not have his backpack when Hendron shot him. *See Padgett*, 312 S.W.3d at 350.

Next, the circuit court framed certain of the Commonwealth's questions as impermissibly impugning Williams's credibility. However, it "is well established [that] during closing argument, the prosecutor may comment on . . . witness veracity and credibility." *Jackson v. Commonwealth*, 567 S.W.3d 615, 621 (Ky. App. 2019); *see also Padgett*, 312 S.W.3d at 352 ("[T]he Commonwealth may suggest that a defendant was lying if this is a reasonable inference.").

In this case, Williams's testimony was not consistent. For example, he stated at trial that he could "vaguely" see the shooting from his location inside the house. However, the Commonwealth offered Williams's grand jury testimony,

wherein Williams stated that Hendron fired the shots before Williams looked out of the window. Moreover, as previously discussed, Williams's testimony was inconsistent concerning whether he saw Austin with his backpack when he was shot. Further, the jury could have considered that Williams and Hendron were roommates and friends. Therefore, the prosecution did not commit flagrant misconduct with the foregoing comments.

The circuit court was also concerned with the Commonwealth's statement that no one testified that they had seen Austin with a gun when he was shot. However, the record reflects that there was no testimony that Austin had a gun when Hendron shot him. Gordon stated that she never saw Austin with a gun. Austin's girlfriend, Cheyenne Helm, testified that Austin did not get into the car before he was shot. Indeed, even Hendron admitted that he did not see Austin with a weapon when he shot him. Thus, we can discern no flagrant misconduct from this statement.

The circuit court next took issue with the Commonwealth's comment that she did not know how the jury could believe that it was acceptable for Austin to be shot while fleeing his dad. However, from the evidence presented at trial, the Commonwealth could reasonably infer that Hendron shot Austin as he was fleeing. The medical examiner testified that Austin was shot twice in the back of his body. Moreover, Helm testified that "Austin was running to the car," and Hendron came

out "right after him" and "was shooting at Austin." Further, Gordon testified that Austin "walked quickly" out of the house while Hendron "just walked slowly" before shooting him. The jury could reasonably infer, based on the foregoing evidence, that Hendron shot Austin while he was fleeing from Hendron, and it was not misconduct for the Commonwealth to pose the question of whether that was a permissible thing to do.

Next, the circuit court disagreed with the Commonwealth's following assertion: "If you believe that [Hendron] failed to perceive the risk that his conduct would result in Austin's death, that's a reckless homicide. I don't think anybody could say that you failed to perceive the risk that you would shoot somebody and they would die." Again, we fail to see how this reasonable inference amounts to flagrant prosecutorial misconduct. Indeed, one of the primary roles of the jury is to draw inferences from the facts and evidence presented at trial. *St. Clair v. Commonwealth*, 54 S.W.2d 1, 3 (Ky. 1932).

The circuit court also disagreed with the prosecution's decision to question Hendron's credibility as a witness at trial. Again, Hendron's trial testimony varied in important ways from his statements to police right after the shooting regarding Austin's location and conduct when Hendron shot him. The Commonwealth may make arguments about the credibility of witnesses in closing arguments. *Padgett*, 312 S.W.3d at 352-53.

-16-

Consequently, in this case, the circuit court granted Hendron a new trial based on statements at the closing argument where the prosecutor either detailed facts or made reasonable inferences from such facts. We disagree with the circuit court that any of these statements were flagrant misconduct requiring a new trial.

### 3. Golden-Rule Argument

In its order granting a new trial, the circuit court identified two alleged "golden-rule" arguments made by the Commonwealth in its closing argument with which the court disagreed. A "golden-rule" argument is "one in which the prosecutor asks the jurors to imagine themselves or someone they care about in the position of the *crime victim*." *Caudill v. Commonwealth*, 120 S.W.3d 635, 675 (Ky. 2003) (citation omitted) (emphasis added). The Kentucky Supreme Court has held that a "golden-rule argument" that serves to "cajole or coerce a jury to reach a verdict" is erroneous. *Lycans v. Commonwealth*, 562 S.W.2d 303, 306 (Ky. 1978). The argument is particularly prejudicial when it is "repeated and reiterated in colorful variety," whereas "[a]n isolated instance of improper argument . . . will seldom be found prejudicial." *Stanley v. Ellegood*, 382 S.W.2d 572, 575 (Ky. 1964) (citations omitted). To that end, the prejudicial effect of a "golden-rule argument" must be assessed on a case-by-case basis. *Id*. at 575. In this case, defense counsel did not object to either statement at trial.

The first alleged "golden-rule" argument the circuit court described in this case was when the Commonwealth asked whether shooting Austin was "an appropriate amount of force to use on your own child," and then theorized that "we can all think of different ways as a parent, as a child, as a sibling, that this situation could have been de-escalated, for a family member you love." However, this statement does not ask the jury to put themselves in *Austin's* shoes but rather in *Hendron's*. Therefore, the foregoing statement did not ask the jurors to imagine themselves or someone they care about in the crime victim's position and is therefore not a "golden-rule" argument.

The second statement was, "what happens to their sons (motioning to the victim's family) I care about, and you all should too, as members of this community." Again, this statement did not ask the jurors to put themselves or their loved ones in the victim's shoes. The Kentucky Supreme Court has previously held that the Commonwealth may tell a jury that the "one way" to stop "these useless killings" is "for all of us to do our jobs . . . to see that [the defendant] pays the penalty for what he has done." *Wallen v. Commonwealth*, 657 S.W.2d 232, 234 (Ky. 1983). The foregoing comments are similar and "within the bounds of propriety." *Id.*

Consequently, "[n]one of the foregoing statements asked the jurors to imagine themselves or someone they care about in the position of the crime

victim." *Finch v. Commonwealth*, 681 S.W.3d 84, 98 (Ky. 2023). These statements were thus not "golden-rule" arguments, and we discern no error.

### b. The Commonwealth's Examination of Witnesses

The circuit court also granted Hendron a new trial based on the Commonwealth's examination of certain witnesses. Specifically, the circuit court took issue with the Commonwealth for allegedly eliciting false testimony from two witnesses – Gordon and Helm – and failing to elicit certain testimony from two other witnesses – Hendron and Tracy Curtsinger. Defense counsel did not lodge any related objections at trial.

### 1. False Testimony

In its order, the circuit court identified inconsistent testimony from some witnesses – a common situation in most trials. It did not show that the Commonwealth intentionally or deliberately elicited false testimony from certain witnesses. Under Kentucky law, to prove prosecutorial misconduct based on eliciting false testimony, "the defendant must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *Commonwealth v. Spaulding*, 991 S.W.2d 651, 654 (Ky. 1999). Knowing falsity is not proven "merely [by] cit[ing] inconsistencies in the testimony of various witnesses and then conclud[ing] that they must be perjurious." *Johnson v. Commonwealth*, 292 S.W.3d 889, 898 (Ky. 2009), *overruled on other grounds by*

*Ray v. Commonwealth*, 611 S.W.3d 250 (Ky. 2020).  Rather, the defendant must

provide "evidence demonstrating that [the] witness committed perjury."  *Id*.

Hendron cannot meet that high bar in this case.  As discussed by the

Commonwealth in its brief:

> Start with the testimony of . . . Gordon.  The circuit court said that Gordon falsely testified that Austin had not yet grabbed his backpack when the defendant shot him.  As proof of her perjury, the court pointed to contradictory statements that Gordon made to police after the shooting.  But unlike Gordon's trial testimony, her statements to police were not made under oath.  And even if they were made under oath, the circuit court points to no evidence showing why the trial testimony (as opposed to her statements to police) was false.  As the circuit court notes, defense counsel attempted to impeach Gordon with her prior statements to police.  And the court ordered the Commonwealth to mention Gordon's prior statements to police in its closing argument.  The jury thus had all the information it needed to decide which statement was more credible.  The Commonwealth did not engage in misconduct by declining to make Hendron's case for him.  Moreover, even if the Commonwealth erred, it was cured by the court's order that the prior statement be referenced in closing argument.
>
> The circuit court's discussion of the Commonwealth's examination of . . . Helm is also flawed.  The circuit court claimed that Helm lied when she testified that Austin was shot before he reached her car.  This, the court said, contradicted statements that Helm previously made to police that Austin opened the car door before falling to the ground.  But there was no contradiction, since Helm testified that *both* events occurred.  Helm testified that Hendron *started* shooting "whenever Austin stepped down from the porch," and the first shot hit

-20-

Austin in the back after he stepped off the porch. But despite being shot, he was still moving towards the car when the defendant fired again. And Helm testified that Austin opened the door to the car before he fell to the ground. Accordingly, there is nothing inconsistent about the statements cited by the circuit court.

(Citations omitted.) The foregoing testimony is a far cry from proof that the witnesses committed perjury.

Additionally, the circuit court also identified Helm's statement as perjury about whether she knew what was in Austin's bag. Again, as discussed by the Commonwealth:

To be sure, Helm testified at trial that she did not know there was a gun in Austin's bag. And defense counsel attempted to impeach this statement with video showing that Helm knew – by the time she was speaking with officers after the shooting – that there was a gun in the bag. But the Commonwealth confirmed on redirect that Helm could not recall when she became aware that there was a gun in the bag – i.e., before Austin was shot or after the shooting when she came into possession of the bag. Neither statement therefore was clearly false.

(Citations omitted.) Indeed, as further stated by the Commonwealth, "[i]nferences could be drawn in either direction. But that job was for the jury, not the circuit court." This testimony does not provide the foundation for a finding of prosecutorial misconduct based on eliciting false testimony.

-21-

## 2. Failure to Elicit Relevant Testimony

Finally, the circuit court took issue with the Commonwealth's failure to elicit particular testimony from Hendron's son, James Michael Hendron, and Curtsinger regarding Austin's alleged drug use. Hendron did not object to this issue at trial or raise the issue as grounds for a new trial in his post-trial motion. Moreover, the circuit court failed to cite any case law stating that the Commonwealth must produce testimony that may possibly aid the defense. We agree with the Commonwealth: "[i]ndeed, that is why defendants are entitled to counsel – so that their attorneys may present their own evidence and elicit their own testimony rather than relying on the government to present their case for them." We see no palpable error or other misconduct on the Commonwealth's part for declining to characterize Austin as a drug addict – especially when his toxicology report came back as negative – or harping on the fact that Austin may have had a problematic relationship with Hendron.

The circuit court's "Monday-morning-quarterback approach" contradicts our well-established precedent in this area. "A jury is entitled to draw all reasonable inferences from the evidence[.]" *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 287 (Ky. 2014). "The jury is instructed to reach its verdict 'from the evidence;' and if there was competent and relevant evidence affording a reasonable and logical inference or conclusion of a definite fact, this [C]ourt will not invade

-22-

the jury's province to weigh conflicting evidence, judge the credibility of witnesses and draw the ultimate conclusion." *Beatrice Foods Co. v. Chatham*, 371 S.W.2d 17, 19 (Ky. 1963).

Based on the record in this case, we are unconvinced that the Commonwealth engaged in such serious, pervasive, or flagrant misconduct that the only conclusion was to reverse Hendron's conviction and grant him a new trial. Conversely, the circuit court not only ignored the law on this matter but also impermissibly encroached on the province of the jury as finder of fact when she engaged in an independent review of the case in contravention of our jury system.

## CONCLUSION

For the foregoing reasons, we reverse the circuit court's order granting a new trial and remand with instructions to reinstate the jury's verdict.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Russell Coleman
Attorney General of Kentucky

Matthew F. Kuhn
Solicitor General

John H. Heyburn
Principal Deputy Solicitor General
Officer of the Attorney General
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Christopher B. Thurman
Louisville, Kentucky